090981, County of Will, Adelaide County Director, v. Tom Zdanewicz, California Department of Justice Counselor, you may proceed. May it please the Court, Counsel. This case is about burdens of proof and failure to meet burdens of proof by simple questions. This case revolves around an individual who is cited by the County of Will for violations of certain portions of the County Code, mainly referring to the movement of soil on his property. He is cited for four counts. Two are at question in this case. Those two involve an allegation that he moved fill on his property in violation of the site development permit requirement of the county and that he allowed fill to be brought to the property in violation of a stop work order. Now, as it relates to the facts of the case that are set forth in the transcript and in the common law record, the case that was brought by the state in this regard was one of... could have been easily proven if they had chosen to follow through with each aspect of the case. They chose not to, and because of that, they did not meet their burden in this case. Specifically, as it relates to the issues that are before this Court, there's an issue of jurisdiction. From the standpoint of the entirety of the proceedings, the review of the transcript shows that there was never any indication that the property in question is part of the County of Will. Well, what about unincorporated? It's got to not just be in Will County, but it's got to be unincorporated to Will County. That's the second part of the equation. There was never any indication from any witness brought by the state of whether or not this parcel of land was in the incorporated or unincorporated part of Will County. Again, that was a simple question and a simple answer that they could have proven in a matter of two minutes. They elected not to. In this case, the statute itself suggests that the county ordinance deals with the issue of land being brought onto sites in unincorporated Will County. There was never any indication nor any evidence offered that suggested that this land was in unincorporated Will County. From the standpoint of the defendant himself, there was no in-court identification of the defendant. There was an offhanded attempt at making an in-court identification when the engineer from the county was on the stand and the prosecutor asked the engineer if Mr. Zdenchevitz was in the courtroom, and he said he was. Then he moved on. He didn't ask him to identify him by a piece of clothing. He didn't ask him to point him out. There's no reference in the record that he pointed them out. All he suggested was that he's sitting in the courtroom. More directly as it relates to that identification, that ties into the allegation regarding the violation of the stop work order. Specifically, when Mr. Zdenchevitz, the engineer, was on the stand, he testified that I had come to the site in May, I believe May 15th of 2007, and had tendered a cease and desist order or a stop work order. I believe they called it a red tag order. No testimony was brought forth regarding the terms of that stop work order, what it meant, what it required, what it prevented, what it prohibited. All the entire testimony was was that there was a stop work order. More importantly, there was no evidence that the stop work order was communicated to the defendant. Mr. Zdenchevitz at first suggested that he had brought the stop work order to the defendant himself and then corrected himself and noted that he had brought the stop work order, in fact, to the defendant's wife. Again, though, he never once suggested that the defendant was aware of the terms of what the stop work order consisted of. It could have easily been rectified had the state elected to bring the stop work order into court and put it into evidence. It wasn't. It wasn't part of their initial complaint. It wasn't part of any pleadings. There's no record of this stop work order in the record other than references to a generic stop work order. As it relates specifically to the violation of 9.41 regarding the site development permit, the state put on two witnesses, Mr. Ratajchik, the engineer, and Mr. Galagani, the neighbor to the south. And Mr. Galagani, it turns out, was the individual who filed the initial complaint asking for intervention by the county in this regard. There was suggestion that there was work going on on the property, that there was fill being brought to the property, that there were mounds of dirt on the property. In fact, Mr. Ratajchik testified that he came to the property in January of 2007 at the request of Mr. Galagani and found no evidence of anything that he could cite. He came back in May of 2007 and suggested that he was able to see mounds of dirt. He didn't testify whether or not those mounds of dirt were new dirt brought onto the property, whether they were dirt moved from one portion of the property to another,  Now, in order to support the allegation, the necessary allegation in the county code, which requires that there be a specific amount of dirt be brought onto the property in order to be in violation, specifically, I believe it's 200 cubic yards of dirt, the state was under a mandate to prove an amount of dirt. They could have brought somebody from the Army Corps of Engineers. They could have brought a topographical map. They could have brought somebody who could testify their estimation, subject to cross-examination, as to how much dirt was on the property. Again, no testimony. Mr. Galagani, who suggested he was a landscaper by trade, said he saw a number of six-wheelers and a number of semi-loads going to and from the property. He suggested that those loads contained a certain amount of dirt, but he didn't know whether there was dirt in the loads to the property or leaving the property. He didn't know whether there was dirt, how much dirt was in the loads themselves. He saw trucks in a distance, but he didn't see piles of dirt in a distance. But isn't that only become relevant if you don't meet the requirement, or you don't need to get the site development permit? That's true. And isn't that your client's burden to say that he fell within the exemption and so that he didn't have to get the site development permit, and because he didn't have to do that, then the state would have to prove that the amount of the fill, where the lot line was at, how many, you know, all of those things only become relevant when you bring up the defense, which wasn't brought up. I don't think that it was my client's burden to bring up that defense. I think that that was a specific part of the state's obligation to prove, because ultimately, in order for him to prove the negative, that would essentially have shifted the burden from the state to my client to prove what's been titled a misdemeanor case in the complaint. But doesn't the case law seem to indicate that the burden to prove the applicability of an exception to the permit requirement is that burden was on your client? There's case law that suggests that the burden might have been on my client, but again, this refers to a specific language of the statute, language of the ordinance itself, and the language that is in the case that the state cites in suggestion of that burden isn't the same as what's cited or what's mentioned in the County of Wills Ordinance. The County of Wills Ordinance is the only ordinance that says it's a misdemeanor, that suggests that it's criminal in nature. Well, you're focusing in on the misdemeanor aspect, but the fact is if there's an exception to the permit requirement, then the case law suggests and indicates that you must prove that. And there was no proof of that, was there? There was no. In fact, the defendant didn't put on a case at all. Right. But I think that would unnecessarily shift the burden to the defendant, and I don't think that would be appropriate in this regard, especially when we're talking about a quasi-criminal prosecution. In this case, you would have required the defendant to come in and suggest there isn't 200 yards of dirt put on the land. All that would be sufficient would be for him to have taken a stand and say there's 199 yards of dirt or less, and I think that would unjustly shift the burden to him. I think, more importantly, because of the way the statute or the ordinance is drafted, that it's incumbent upon the county to suggest there's more than 200 yards that were brought on. That would be my belief. Now, as it relates to the case law, again, when I reviewed the case law, the state tender, the dichotomy between the ordinance involved in that case and this ordinance, I think, was glaring because this is the only ordinance that suggests it's a misdemeanor. This is the only ordinance that doesn't suggest that it's a civil matter. And in that regard, you get into the issue of whether or not the defendant is required to prove his own innocence, and I don't think that that's something that the court should do. I don't think it's an appropriate shift. There are some defenses that defendants have to prove, I think. Yes, there would be, but in this case, you would be requiring a defendant to essentially suggest to bring in an expert witness to testify that there was less than 200 yards of dirt, when there may be 20 yards of dirt on the entire surface. It might have just been shifted from one section of the 10 acres to another. We don't know that answer. And what we have also, you have to understand, is a witness, Gallegani, who said that he had received a stop-work order previous that he had violated because he had erected a berm that crossed both properties. And that affected Ratajkic's ability to analyze whether or not the amount of dirt that was brought in was, in fact, in contravention to the ordinance. Meaning, he said, I came up to the lot line. Under cross-examination, he wasn't sure where the lot line was, give or take five feet. But then we had Mr. Gallegani say that it was my berm that went across the lot line. So are we to understand that the dirt that came up to the lot line was created by Mr. Gallegani, or was it created by Mr. Zdenchevitz? As it relates... But again, isn't that only, that's only relevant if it's shown that you have more than 2 1⁄2 acres and the 20 feet from the property line. I mean, none of this matters unless you somehow fall within the exception to having to get that permit. And I guess I view that as an affirmative defense to the requirement of getting the ordinance. I'm not required to get a permit, which would be an affirmative defense. And you're saying, no, that the state has to prove that, that you don't fall under any exemption as well? My argument is that it would unnecessarily shift the burden to the defendant to prove innocence in this regard, instead of for the state to prove their case. From the standpoint of... And there's many cases cited regarding the issue of the burden that was applicable to this case. Most of the cases suggest that there's a burden of clear preponderance of the evidence that applies to these types of quasi-criminal cases. But again, reviewing those cases, those cases don't mention what this ordinance mentions. It suggests that any offender would be guilty of a misdemeanor for each day that they're in violation. A misdemeanor necessarily wouldn't involve a criminal penalty. A criminal penalty would mean that they would have to prove each part of their case beyond a reasonable doubt. Now, from the standpoint of the stop-work order, I think it's very clear... I don't mean to stop you up there on the burden of proof beyond a reasonable doubt by the preponderance. There wasn't jail time available in this case, was there? There wasn't jail time requested, no. No. But... So then it becomes a preponderance of the evidence case, doesn't it? But when you read the specific ordinance itself, it suggests that it's a misdemeanor. Counsel, you have two minutes. But the punishment doesn't include jail time? Punishment was a fine. Correct. And all those cases are preponderance of the evidence? Correct. Clear preponderance of the evidence. Now, from the standpoint of the stop-work order, again, I'd ask the court to review the entire record. The state's own witnesses suggested that there was no violation of the stop-work order. Mr. Gallegani testified that he saw no additional work done on the site after he... At first he said there was additional work done, and then he stopped and said, wait a minute, you mean after the May 17th date? Yes. No, I haven't seen anything done. Mr. Matejko said the exact same thing. He saw no proof of any violation of the order. There was a suggestion that dirt had been moved around on the site, but again, we don't know the terms of the stop-work order. We don't know whether the terms require him to bring the property into compliance by removing dirt. So is it a violation of the stop-work order that we don't know the terms of to take the dirt that's violative of the ordinance off of the land? We don't know. Mr. Gallegani suggested we saw trucks going to and from. He doesn't know whether the trucks were empty going to and full going away or vice versa. Ultimately, from the standpoint of the case, the two counts that the defendant was found guilty on, I think it's apparent on the record that the state did not meet its burden as to either count. And we'd ask that the court overturn the ruling. Thank you. Thank you, Counsel. Counsel, you may proceed. May it please the court, Counsel. Before I start my argument, I'd like to acknowledge an error that's in my brief. As part of my argument regarding the applicable burden of proof, I cite to Section 5-1-2-1.1 of the Municipal Code, which allows for ordinance violations to be charged as misdemeanor criminal offenses if the authority determines to do so. The Municipal Code does not apply to this county ordinance violation, and I'm asking the court to disregard and ignore the reference to that inapplicable statute. And the reference you're referring to again is what? It's on page 15, I believe, of my brief. And I refer to the Illinois Municipal Code, which, of course, would only apply to municipalities. That being said, it's the state's contention that the applicable burden of proof in this case was a clear preponderance of the evidence. Well, let me just answer. Let's forget the burden of proof for just a moment. This ordinance requires that the offense occur. This ordinance, by its own terms, applies to unincorporated Lowell County, correct? It does, Your Honor. What is the evidence in this record that this occurred in unincorporated Lowell County? I don't believe that was an element that the county or the state had to prove. That was just the authority under which it had to act, and I don't believe that the county was required. So it applies in Joliet? It applies in Shorewood? Homewood? I believe it's a tantamount to a venue argument. That venue has to be proved as an element of the offense. Well, let me disagree. This is the county prosecuting this, not the state. Now, if it was a speeding ticket under a state statute, speedings are a violation of state law, whether it's in Carbondale or Peoria or out of Chicago, right? Correct. So those cases say, well, you don't have to prove, you know, that it happened in the county in which you're, you know, venue issues. But this ordinance makes it a violation to put this dirt, this spill, only by its terms, in unincorporated Lowell County. It doesn't even apply county-wide. It's got an element of the offenses if this conduct takes place in unincorporated Lowell County. Well, it's based in it. It only applies to unincorporated Lowell County, but I still don't believe it's an element that the county needs to prove at the trial in the case. I believe that that's just the authority under which it can act, and if the defendant believes he is not subject to the ordinance, then he could do a motion to dismiss prior to the trial or show that he was not under the authority of the county. But I don't believe it needs to be proved as an element of the offense in this case. That's just the authority by which the county could act. The defendant did not raise this as an issue at all. He did not. He never raised it as an issue before coming to this court. I'm getting back to the burden of proof. I realize that Section 9.6-3 does say that this shall be deemed a misdemeanor, but it simply is not, and it cannot be, under the ordinance. Counsel stated that jail time was not requested in this case. It simply was not even available. The applicable penalties are set forth in Section 14.14 and calls for fines only. Because of that, the clear preponderance of an evidence standard is the standard that's applicable here. The defendant refers to various elements that he believed that the state needed to prove and did not in this case, and I'd like to touch upon the defendant's argument that the state didn't prove that the defendant actually received a stop work order, or what that order required, and did not prove that the defendant violated that order. However, the county worker in this case testified that he dropped the stop work order off with the defendant's wife on March 15, 2007. He followed that up with a letter referring to the stop work order, again saying that they need to stop work on the property, and had conversations with the defendant after issuance of the stop work order, basically having conversations about what he needed to do to come into compliance. I believe that was sufficient to show that the defendant was, in fact, aware of the stop work order. And that's the, how do you say that, Reddith? I was trying to avoid that. Or TASZAC, I would say. Absolutely. That's what you're talking about. Yes, thank you. Also, regarding the terms of the stop work order, I believe stop work means stop work. The defendant was working on his property without getting a permit. Stop work, cease and desist means stop what you're doing. And notably, later in that 9.6-2, when it refers, when that section refers to issuing a stop work order after a permit has been issued, after somebody's requested a permit, that particular section does say that the stop work order has to be delivered to the person or his agent and has to set forth specifically the violations that are occurring and what they have to do to come back into compliance with their permit. So I think if the ordinance meant to require more specificity in just a stop work order, they knew how to do so. But stop work means stop work. Thank you. Regarding that the state didn't prove that the defendant came into an exception under the statute, under the ordinance, there are eight exemptions or exceptions to the permit requirement, only one of them being the one that the defendant refers to that it has to be that he could fill under 200 cubic yards or not within 20 feet of the property line. By the defendant's argument, the state would have to come in and prove that every single one of these eight exceptions did not apply to the defendant. And that would just be ridiculous. It's the defendant's burden to show he is exempt from the ordinance if he believes he is. And he did not do so in this case. He presented no evidence at all regarding that fact. And except for in my brief, I believe that the state did prove or did show that the amount of fill wasn't excess in that amount anyway. But the ordinance doesn't say that it exempts property in incorporated areas of Will County, does it? It says it applies to unincorporated property in unincorporated Will County. So we're not talking about an exemption from the statute for property in incorporated areas of Will County. We're talking about a statute that applies by its very terms or ordinance to unincorporated Will County. And there's no evidence in this record that this property is in unincorporated Will County. That's correct.  But again, I believe that that would be something that the defendant would address prior to trial. Well, doesn't the defendant have to, if it is an exemption from the statute, then the defendant has to prove that he is entitled to the exemption, correct? Correct. And as we just discussed, it's not an exemption to the statute. It's a term of the statute. It doesn't exempt. We're not talking about a statute that says this exempts unincorporated Will County. It says it applies only to unincorporated Will County. Yes, but I still believe that that's not an element that the state needs to prove. I believe that that's something if the defendant, it wouldn't be an affirmative defense necessarily at trial as an exemption to the statute. But however, it would be incumbent upon the defendant to perhaps pre-trial say the county has no authority to prosecute me. I don't live in unincorporated Will County. Here's my documents that show it. And I move to dismiss this complaint against me. And the authority for that is what? Just that it's not an element of the offense. That it's simply what gives the county the authority to act and to file a complaint against the defendant. But it's not an element of the crime that needs to be or of the offense ordinance that needs to be proved. Regarding to, I'd like to briefly touch upon the whether the county proved that it was in fact the defendant who did this violation. First, I don't believe that the fact that he owned the property needed to be shown in this case. I believe that him having control over the property would have been enough. And one of the cases I cite in my brief for a different proposition, which is County of Kendall. In that particular case, they dismissed, the appellate court dismissed charges that had been brought against the actual owners. But let the charges stand as to the tenants of the property, those being the persons who had acted and done the ordinance violation. So I don't think ownership was necessary in this case. And I believe that the state did prove that the defendant was in fact the person who perpetrated this crime, this ordinance violation. Defendant refers to the fact that Ritazac stated that he only spoke with the defendant's wife in March of 2007, in May of 2007. However, he testified that he only spoke with her on that day. And he didn't speak with the defendant. It's clear from all the testimony that was presented by him that he did in fact know the defendant from previous encounters with him. He testified to an incident prior to investigating this particular case. He talked to him on the telephone. In fact, I think during part of his testimony, he referred to him as Tom. I believe it's clear from the testimony given that he knew who the defendant was. And in fact, when asked if it was the defendant who was in court, he did state yes. While there's no affirmative statement by the court that he made an in-court identification, the county attorney did state at the motion for a directive finding that he did in fact stand up and point to him. And again, it's clear that Ritazac did know, in fact, who the defendant was in this case. If there's no further questions, thank you. Thank you, Counsel. Counsel? From the standpoint of what Counsel mentioned, first of all, regarding the Kendall v. Rosenwinkle case, this whole case is about names that are difficult to pronounce. The Rosenwinkle case involves the enforcement of a permanent injunction. And that was essentially the court determined it was enforceable against tenants. It didn't talk about whether or not the propriety of the fines and the like were enforceable against tenants. It was regarding whether or not they could be stopped from doing whatever they were doing in violation of that particular code. Now, again, the issue is, did the state prove all of the elements of their crime to allow them or the violation to allow them to prosecute the defendant? In this case, again, there's no mention whatsoever in the entirety of the record of where this property is and who owns the property. Now, Mr. Zdenchevitz is being prosecuted, but we don't know whether he's the owner. We don't know whether or not his wife is the owner. We don't know whether or not they own it jointly. We don't know anything about ownership of this property other than it suggests that Mr. Zdenchevitz is the defendant. Now, the other issue that we need to address is the fact that the stock work order, counsel suggests on many occasions that Mr. Rotacek talked to Mr. Zdenchevitz, that he referred to him as Tom. Again, we don't know anywhere in the record what the terms of this stock work order are. Now, the problem with this is specific because when you review the complaint itself and the prayer for relief in the complaint that was filed six months after the issuance of the stock work order, it suggests in paragraph C that the defendant restored the site to the condition it was in prior to the issuance of the stock work order. So are we aware of whether or not restoring the site is in violation of the stock work order? We don't know that because we don't know what the stock work order says. And that's important because of one other issue. Paragraph A of their prayer suggests that he be fined a specific amount for every day that he's in violation. So it's a situation where he can't win. If he is in violation and he attempts to remove soil to bring him back in compliance with the ordinance, then is he guilty of violating the stock work order? So does he essentially get fined for not complying with the stock work order when he was attempting to comply with the stock order, which would require his fine because he was moving dirt again? Without the specific terms of the stock work order, we can't answer that question. And for that reason, I don't think that either of these counts should be upheld. The court will take this case under advisement.